# Alford's Adm'r *v.* Alford's Adm'r.

*Bill in Equity by Administrator, for Construction of Will, &c.*

1. *Devise and bequest of estate for life, with unlimited power of disposition, and remainder over.*—A devise of an express estate for life, with general power of disposition—"without restriction, and without being accountable for the same"—whatever might be its construction if uncontrolled by statutory provisions, is, by the express words of the statute (Rev. Code, § 1595), enlarged into an absolute estate in fee, only in favor of creditors and purchasers, and future interests limited thereon are preserved; and although the statute speaks only of lands, the same rule of construction must be applied to both real and personal property, when given by the same words, and in the same clause of the will.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. H. AUSTILL.

The bill in this case was filed on the 9th August, 1873, by W. T. Hatchett, as the administrator *de bonis non*, with the will annexed, of Hamlin C. Alford, deceased, against James W. T. Pool, as the administrator of the estate of Mrs. Frances E. Alford, deceased, who was the widow of said Hamlin C. Alford, deceased; and sought a judicial construction of said Hamlin C. Alford's will, which was admitted to probate in said county of Montgomery, where he resided at the time of his death, on the 30th August, 1871. His estate consisted of lands, money, and other personal property, all of which went into the possession of his widow, who was also executrix, under the provisions of his will. At her death, in May, 1873, she also left a considerable estate, consisting of lands, money, and a certificate of deposit for $5,600 with the banking-house of Josiah Morris & Co. This money was claimed by her administrator, who had possession of the certificate, and it was also claimed by the complainant, as the administrator of her husband's estate; and the bankers refusing to pay the money to either of them, until his legal right to it was judicially determined, the bill in this case was filed to settle their respective rights. The provisions in the will of Hamlin C. Alford, under which the controversy arises, are copied in the opinion of the court. The chancellor held, on pleadings and proof, that Mrs. Alford took an absolute estate in all the property under her husband's will, and that her administrator was entitled to the fund in controversy. The complainant appeals from this decree, and here assigns it as error.

[Alford's Adm'r v. Alford's Adm'r.]

SAYRE & GRAVES, with whom were D. S. TROY, and GEO. F. MOORE, for appellant.—The case falls within the express words of the statute (Rev. Code, § 1325), which changes the rule established by the former decisions of this court, cited for appellee. The cases of *Denson v. Mitchell* (26 Ala. 360), and *Weathers v. Patterson*, (30 Ala. 404), are strong authorities in favor of the construction for which the appellant contends.—See, also, *Smith v. Bell*, 6 Peters, 68; 37 Ill. 430; 47 Ind. 423; 12 Mo. 3; 23 Geo. 515; *Brant v. Virginia Coal and Iron Co.*, 3 Otto, 326.

ELMORE & GUNTER, contra.—A bequest or devise of an express estate for life, with an absolute, unqualified power of disposition, gives the first taker an estate in fee, or an absolute estate, and a remainder over is void for repugnancy.— *Allen v. White*, 16 Ala. 181; *Flinn v. Davis*, 18 Ala. 132; *Randall v Shrader*, 20 Ala. 338; *Weathers v. Patterson*, 30 Ala. 304; *Jackson v. Robbins*, 16 John. 516; *Barford v. Street*, 16 Vesey, 135; *Irwin v. Farrer*, 19 Vesey, 86; *Helmer v. Shoemaker*, 22 Wendell, 137; 16 N. Y. 93; *Perry v. Merritt*, 18 Eng. Law Rep. 152; 13 Vesey, 444; 2 Vesey, 592; 10 Vesey, 370.

STONE, J.—The will of H. C. Alford gives to his wife, Frances E. Alford, for life, his entire property and estate, consisting of real and personal property, "to be used by her in such manner as she may choose," and "authorizes her to sell and dispose of all the property, and to invest the proceeds according to her own judgment, and to use and enjoy the said property, or the proceeds thereof, during her life, without restriction, and without being accountable for the same." The testator then proceeded to declare as follows: "I give and bequeath one half of the property, or the proceeds thereof, which my wife may hold at the time of her death, and which she obtains under the provisions of this will, to my next of kin, and the other half in such manner as she may direct by will; and in case of no such will, to her next of kin." Mrs. Alford died intestate, leaving real and personal property, which had come to her under the will of her husband; and the question arises, to whom does such property belong?

The will, in the present case, gives an express life-estate to Mrs. Alford, with an express general power of disposition, "without restriction, and without being accountable for the same;" and this presents the question which, in *Weathers v. Patterson*, 30 Ala. 304–307, we said, had not been decided. We said further, that the question did not arise in that case,

and that it was not necessary then to decide it. The question, however, is directly presented by this record.

If the rule be not changed by the statute hereafter referred to, and if we follow our early decisions made on this question, we should probably feel bound to hold, that Mr. Alford, in his attempt to make a devise and bequest over of what his wife might hold at the time of her death, obtained by her under the provisions of his will, attempted to confer rights incompatible with the unlimited power of use, enjoyment, and disposition, therein previously conferred on his wife. The older authorities, so holding, are almost uniform; and the doctrine has, in effect, received strong and repeated indorsement in this court.—*Allen v. White*, 16 Ala. 181, 186; *Flinn v. Davis*, 18 Ala. 132; *Randall v. Shrader*, 20 Ala. 338; *Weathers v. Patterson*, 30 Ala. 304; *Barford v. Street*, 16 Vesey, 135; *Irwin v. Farrer*, 19 Vesey, 86; *Page v. Soper*, 21 Eng. Law & Eq. 499; *Perry v. Merritt*, 18 Eng. Cas. (Law Rep.) 152; *Melson v. Cooper*, 4 Leigh, 408; *Jackson v. Bull*, 10 Johns. 19; *Jackson v. Livingston*, 16 Johns. 537; *Morris v. Phaler*, 1 Watts, 389; *King v. King*, 12 Ohio, 390. The case of *Denson v. Mitchell*, 26 Ala. 360, is somewhat variant from the principles above stated, but has never been proclaimed or treated as overturning *Allen v. White, Flinn v. Davis*, or *Randall v. Shrader*.—See *Weathers v. Patterson, supra*.

The first three of the above cases from this court were decided before the Code of 1852 went into operation. In that Code was embraced the following section, numbered 1325—Rev. Code, 1595: "When an absolute power of disposition, not accompanied by any trust, is given to the owner of a particular estate for life or years, such estate is changed into a fee absolute, as to the rights of creditors and purchasers, but subject to any future estate limited thereon, in case the power is not executed, or the lands sold for the satisfaction of debts, during the continuance of such particular estate."

Whatever doubts may have been entertained of the correct rulings of this court, heretofore made, on the question we are considering, those doubts are resolved by the statute copied above, so far as that statute extends. Where a life-estate is created, and an absolute power of disposition conferred on the life-tenant, this enlarges the life-estate into a fee; not absolutely, but in favor, and only in favor, of the creditors of, and purchasers from the life-tenant. But, while the estate is thus enlarged in favor of creditors and purchasers, the same statute declares, that, in case the power is not executed, nor the lands sold for the satisfaction of debts, during the continuance of the particular estate, the property remains subject to any future estate limited thereon. In this case,

it is not contended that the power was executed, or the property sold. We think the statute quoted was, in part, intended to confirm our decisions, so far as they affect creditors and purchasers; and also to protect the estates of those in remainder, in cases where there had been no sale, or other execution of the power. Thus construed, the statute meets our hearty approbation; for it can not be controverted, that the principle on which our former decisions have been made to rest, has never given satisfaction. The public mind, professional as well as non-professional, has all the while felt that the wish and will of testators have been thereby defeated, rather than carried out. This section of the Revised Code was adopted from the Revised Statutes of New York; and Chancellor Kent has put the same construction on it, which we have given above.—4 Kent's Com., marg. p. 320.

But section 1595 of the Revised Code provides for real estate, and makes no provision for personalty. In this case, there is both realty and personalty. Shall we declare one rule for the realty, and another for the personalty? In the will of Mr. Alford, all the property of the testator is disposed of in one clause—real and personal, moneys, *choses in action*, and rights of action. He makes no discrimination in the use or enjoyment, either by the devise of the particular estate, or by those who are to take in remainder. Evidently, he intended that each species of property should take the same direction. We have, then, the case of a will, which, by one and the same clause, disposes of both real and personal property, in language, which, if we follow former decisions, apparently requires one construction as to the realty, and another as to the personalty; language which, if thus construed, and if only realty was concerned, would send the property in one direction, while, if only personalty was concerned, the property would go into other hands. Can we place such variant, double construction on one and the same clause of the testament?

The great, cardinal rule—the rule of rules—for the construction of wills, is to ascertain the intention of the testator, and to give it effect, if it can be done without violating any rule of law.—2 Redf. on Wills, 333; *Thrasher v. Ingram*, 32 Ala. 645, 660, and authorities cited. It is manifest that Mr. Alford could not have intended to give to his wife an absolute, indefeasible title to the personalty, and only a life-estate in the realty. Conferring the right to each in and by one and the same clause, he intended her interest in each should be the same. If, then, we construe this language as giving her an absolute right to the one, and only a life-estate in the other, we fail to carry out his evident intention. We

(23)

will be guilty of making a will for him, rather than constru-
ing the one made by him. In carrying his intention into
effect, we must so construe his will, as to give to Mrs. Alford
the same interest in both the real and personal property ; no
greater in the one than in the other.

A question, very like the one we are discussing, has fre-
quently arisen in England, under wills which blended real
and personal property in the same bequest, with contingent
limitations over to heirs. It is known that, according to the
laws of that country, real and personal property descend by
very different rules. It is said, "there seems an inconsis-
tency in giving the word 'heir,' or 'heirs,' a different import
with reference to different subject-matters contained in the
same general disposition."—2 Redf. Wills, 386. In the
great case of *De Beauvoir v. De Beauvoir*, 15 Sim. 163—*S.
C.*, 3 H. L. Rep. 524—testator devised all his estates in the
funds of England, and all his manors, messuages, lands, &c.,
both freehold, leasehold, and copyhold, to A, B and C, and
their sons, in strict settlement, and ultimately to his own
right heirs forever ; and empowered his trustees to invest the
residue of his personal estate in the purchase of freehold
lands in England, and to convey the same to such of the uses
therein before declared of his manors, messuages, lands, and
premises, devised by his will, as should be then subsisting.
A and B died without issue, in the testator's life-time ; and
C, who was the heir at law and executor, was living, but had
no issue male. The testator's next of kin filed a bill against
C, praying, amongst other things, for a declaration, that in
the event of C dying without having issue male, the plaintiff,
next of kin, would be entitled to the testator's personal
estate. There was a demurrer to the bill, and, in support of
it, it was contended that, inasmuch as the real and personal
estate were blended and disposed of in one and the same
clause, the heir at law, who would succeed to the realty in the
contingency supposed, would likewise be entitled to the per-
sonalty ; although, in the absence of such blending of the
realty and personalty in the bequest, the latter would have
gone to the plaintiff, and not to the heir at law. The de-
murrer was sustained by the vice-chancellor, he remarking :
"It seems to me, if you look at the words alone, to be almost
impossible to hold that the testator had any other intention
than that the same person, or set of persons, should take ;
and the moment you have ascertained, by applying the rules
of law to the explanation of those words, that a given indi-
vidual does answer the description of the right heirs, it fol-
lows, as a necessary consequence, that that person must be
the ultimate taker of every thing previously given."

The property being very large, the case was carried to the House of Lords. The leading opinion was delivered by the Lord Chancellor, Baron St. Leonards (Sir Edward Sugden), and an opinion was also delivered by Lord Brougham. The Lord Chancellor, in the opening of his decree, stated, "The case has been remarkably well argued, both upon authority and upon principle." In his very elaborate opinion, the Lord Chancellor considered and collated most of the English decisions bearing on the question. Among other things, he said: "The will deals with the whole of the vast funded property, which is called in this case, and with some propriety, if its amount only is considered, his 'estates in the funds.' It treats them as a great property, as they are. The testator follows up that immediately, by speaking of his 'manors, reputed manors,' in the usual terms. He then disposes of the property, for life, to certain persons in succession, to their sons, and the issue male of those sons, and so on in succession; providing for the male branch, and only for that branch. Does he make any distinction? Does he entertain any doubt that his estates in the funds will go precisely in the same way as his real estates? I am not now asking how they will go, but what he intended, as his intention appears upon the face of the will. I can entertain no doubt, that his intention was that the personal estate should go precisely in the same manner as his real estate itself. * * * When you are dealing, therefore, with the same disposition, though of another part of the property, you are relieved from the difficulty which you labor under in the more naked case of personal property; and having found that the testator meant what he has expressed, as regards that portion which is real property, you may more readily infer the same intention as regards the other portion of the same gift, depending upon the same words; and you therefore allow the whole disposition the same operation as you would give to it, if it had been confined to real estate alone." Lord Brougham fully concurred with the Lord Chancellor in the views above expressed; and the decree of the Vice-Chancellor was unanimously affirmed.—See, also, *Gwynne v. Murdock*, 14 Vesey, 488; *Pillow v. Rye*, 1 Swan. 185; *Brant v. Virginia Coal & Iron Co.*, Sup. Ct. U. S., Oct. term, 1876.

We hold, that Mrs. Alford took only a life-estate, alike in the realty and personalty, but is not liable to account for any thing that may have perished, or been consumed in the use, nor for any thing sold by her, unless the proceeds went into other investments, which she retained at her death. The income and gains of the property, during the continuance of her life-ownership, belong to her estate.

[Floyd et al. v. Ritter's Adm'r.]

The decree of the chancellor is reversed, and the cause remanded, to be proceeded in according to the principles of this opinion.

NOTE BY REPORTER.—On a subsequent day of the term, in response to an application by the appellee's counsel for a rehearing, the following opinion was delivered:

STONE, J.—Appellee has filed an application for a rehearing in this cause; and, in consequence thereof, we have somewhat modified our indorsement of the principle declared in *Flinn v. Davis*, and *Randall v. Shrader*. We abstain from declaring now what would be our ruling on the question presented, if only personal property were disposed of by the will.—See *Denson v. Mitchell*, 26 Ala. 360.

The petition for a rehearing is overruled.